May it please the Court, I'm Brent Wright. I represent the Slovak Republic. The issue before the Court is whether the Slovak Republic had prudential standing to file an appeal to the Bankruptcy Appellate Panel from an adverse ruling issued by the Bankruptcy Court. By way of factual background briefly, a company that we're referring to as Eurogas 2 sued the Slovak Republic in a multi-million dollar adversary proceeding in France. And it argued that the Slovak Republic had interfered with some talc mining claims. The Republic responded that Eurogas 2 didn't own the talc mining claims that the debtor did. And then at that point Eurogas 2 tried to acquire the claims from the debtor. However, Eurogas 2 didn't want to simply purchase the claims from the estate because it needed to show that it owned the talc claims when the Slovak Republic allegedly committed the interference. So it needed to come up with some kind of a new pro-tunc way to acquire the talc claims. And it sought to do that by having the trustee abandon the talc claims in exchange for a payment of a quarter of a million dollars. The Slovak Republic, which was a creditor in the bankruptcy case, objected to this approach. It prosecuted its objection in an evidentiary hearing that spanned three days. And eventually the bankruptcy court ruled against the Slovak Republic and it approved the abandonment of the talc claims. The Slovak Republic then appealed to the bankruptcy appellate panel, which ruled that the Slovak Republic did not have prudential standing to file its appeal. And the bankruptcy appellate panel dismissed the appeal. The Slovak Republic then appealed the standing issue to this court. And by that point in time, am I correct that the arbitration proceeding terminated? It terminated just prior to the issuance of this decision. Yes. And so it certainly terminated before prosecuting the appeal in our court. And you said in your papers, you cited something on the internet that I got an error message when I tried to get it, that said that there is an arbitration proceeding that is imminent, that Eurogas has threatened to start a new arbitration proceeding, and there's been a 28-J letter about a second arbitration proceeding. Has there been the initiation of a second arbitration proceeding? No. Mr. Robel indicated that he has instructed his lawyers to file one. We anticipate that that will happen if this court were to... And you have two arguments, I think, for prudential standing. I know there's an issue with regard to potential waiver on the arbitration issue. But even if we decide that it's not waived, there is no pending arbitration proceeding in which to predicate prudential standing as a degrieved person as we sit here now, correct? There is a claim by one of the parties that the decision of the panel should be set aside. And then there is this imminent threat that the court refers to. But... But as far as an argument that the Slovak Republic is a degrieved person because it is affecting the positions in an arbitration proceeding, there is no arbitration proceeding right now. That is correct. All right. And that arbitration didn't dispose of this issue, I take it. The arbitration proceeding went in favor of the Slovak Republic. That's what I understand. But did it decide that the Slovak owned the Talc claims? Was the ownership of those, was that the issue? Tell me what that arbitration issue was. The issue was who owned them. The allegation was that the Slovak Republic had interfered with them. And the question was who owned them. And the Slovak Republic said Eurogas II didn't own them. And what did the arbitrator say? The arbitrator ultimately decided that Eurogas II did not acquire them by means of a merger with the debtor. But did that deny that they might have acquired them in some other way? I don't know. And is that arbitration decision, does it have any jurisdictional force to it? Or would you have to then now go to a court to enforce that arbitration? I apologize. I don't know that. It's an international arbitration proceeding, and I don't know the answer. It may be important. I apologize. Can I, let me ask you another question that confused me about, and not, I don't mean to attribute fault, but on the merits, assuming we get past prudential standing, there's an argument about abandonment, and there's an argument about approval as a compromise. And both of you argue pretty vigorously about whether or not the approval as a compromise was correct or incorrect. I have trouble understanding why it would be pertinent to either side. Assuming that the abandonment was proper, then you lose. It really doesn't matter. I assume that you're not going to complain about the fact, if there was a valid abandonment, that there was $250,000 paid into the estate. And if the abandonment was improper, well, the agreement would be null and void, because the agreement on its face is conditioned on the abandonment. So, I guess it's a long-winded question of, is the approval of the settlement, is that really pertinent to you? And I'm going to ask them if it's pertinent to them. I have trouble understanding why. Well, our argument principally on that point was simply, if the bankruptcy court was going to look at settlement and compromise issues, it needed to look at all of them. And so, it was a backup argument to say, look, if you're going to, if you're going to go that way, a bankruptcy court, then you need to look at all of the elements. I mean, I agree with you that the court needs to decide what this was before it can decide what the rules are to apply. And I agree completely that this was an abandonment. And therefore, as to the merits, you look at Section 554. So, if we decide that it was a proper abandonment, then we don't need to address your alternative argument about approval as a settlement. I think that's true. If it was properly abandoned, that would be dispositive as far as the Slovak Republic is concerned. So, you're not arguing that you wanted additional procedural benefits if this were characterized as the sale of an asset versus characterized as an abandonment? Well, the sale of an asset is effective to convey title only when the sale is approved by the bankruptcy court. And if that's all Eurogast II wants, that's fine with us. But that's not what they want. They want nuke-pro-tunk title to the asset. And so, I think the only way they can get that is by means of abandonment. And therefore, I think abandonment is the dispositive issue. And I think that the requirements under the Code have not been met here. Okay. With regard to the abandonment, let me ask you about the abandonment. And you argued to the BAT panel that I think Judge Michael and Judge Hall were asking you about the burden and how much burden there would be in further litigation, the potential for litigating it in arbitration and the like. And you said, I think, or somebody on your side to the BAT panel had argued that, well, the litigation would be relatively easy. But there would be litigation that at least a fact finder or a bankruptcy court could legitimately find, correct, that there would be the necessity or the prospect for some litigation, even if it was something easily disposed of, such as ownership of the top mining deposits. I don't think so. That question could be left completely to the arbitration panel. Well, I get that. But the question is, if there had been, if there was no abandonment the trustee was facing, or at least a fact finder could reasonably conclude that there was the prospect, a reasonable prospect, of some litigation somewhere, right? No. Our whole point was, we have offered to purchase the tout claims on an as-is, where-is, no-questions-asked basis. We'll take them. So if you had bought them on a quick-claim basis, and Eurogas had argued in some other collateral proceeding that what the Slovak Republic got was nada, was nothing, was nothing because it was on a quick-claim basis and there was no warranty of title and the like, the trustee could have been brought in as a third party, right? I don't think so. I think we would have made our agreement and we would have stood by it. The litigation would have been between Eurogas to- So you can assure that the Slovak Republic wouldn't, and you can tell us that Eurogas would not have initiated a third-party complaint against the trustee to bring the trustee in as a third party. I don't see how it could have. But our point was, we have to back up one step, our point was to the bankruptcy court, this asset is not burdensome. And the reason it's not burdensome is that we'll take it as-is, quick-claim basis. And I think we would have been bound by that agreement. But you're giving a narrower definition of burdensome. I think the opposite definition would be, it is burdensome because if we take that agreement, it costs the estate some $113 million. That, by anybody's definition, is real money. I don't understand how it costs the estate anything. Because if we let it go to the Slovak Republic, we then lose the $113 million that the T-E-G- They weren't paying that money, Your Honor. No, they were dropping the claim. Well, they had a proof of claim, and we had objected to, and we were entitled to litigate. I know, but it certainly has got value, and it could easily be said it had more value than the cash that you were offering. No, I think you're conflating the issues. The estate is the estate, and the trustee is responsible for bringing in whatever she can. But it is what it is. It shouldn't matter to her how that estate gets divided up, how the pie gets sliced. It's not an issue of value. Our argument is that the T-E-G claim we had objected to, we think it was clearly an invalid claim. If the court had afforded us the right to prosecute our objection before entertaining the settlement, then there would have been no difference in any event. Okay, now. She has to worry about the value of the estate. There's two hands clapping for that applause. She has to worry about what the assets of the estate are, and she has to worry about what the claims against that estate are. I don't think she has to worry about how those claims get divided up. I think that she... You think it is not her portfolio to worry at all about the $113 million claim? I think that she has to deal with that claim and administer it, and either allow it or deny it. And can't she say that the burden of that claim is so great that it would make burdensome to an agreement with the Slovak Republic, which would avoid, which would mandate that I'm going to have to deal with that $113 million claim? I think in certain circumstances, perhaps. But remember here, we had already objected to the claim. We think the claim was invalid on its face, and so there was no benefit to the estate by having that claim withdrawn whatsoever. And it didn't increase or decrease the pot of money that she had. Her job was to marshal the assets and bring in as many as she could. There's a two-part process, right? The bankruptcy court has to determine whether or not the existence of the property would create a burden, right? And if it does create a burden, then the bankruptcy court has discretion on whether or not to authorize the abandonment, correct? Yes. And but you're not arguing the second part of the prong of the analysis. You're just questioning the existence of the burden, correct? Yes, but I would go... And so, well, is it fair to say that in your briefs to us, you have only argued the first part of that, first prong of that two-part prong? I thought that the other argument was implicit, that if the court were to find, as you now suggest, that that would be an abuse of discretion. All right. Assuming, for purposes of this question, that it's only, that your only challenge is understood by me, hypothetically, was the first part of that burden, you're saying that it wasn't a burden because the trustee could have accepted the Slovak Republic's offer, correct? That was your answer to Judge Ebel? Yes. Now, if, what if the trustee, hypothetically, as it turned out to be reality, accepted Eurogas's offer? Would there still have been a burden to abandon the property because of the existence, the prospect of additional litigation? I think you're putting the cart before the horse. Well, maybe I am, but what, but can you answer the question? I don't know how to. When she's getting a quarter of a million dollars, I don't know how you satisfy the statutory requirement. Well, the second part of the burden, I agree with you that it might very well bear on the second part of the burden, but I don't understand how the decision on whose offer to accept is pertinent for the first prong. But let me ask you a different question. Why, what your, the premise of your answer to Judge Ebel is, if the trustee had only had the wisdom, the foresight, the intelligence to accept the Slovak Republic's offer, that would have, there would have been no burden. Why do we consider any offers, don't, isn't the existence of the property either burdensome or it isn't? If there, why, why do we consider the existence of a burden only against the backdrop of what offers were presented to the trustee? I don't know how you decide burden in a vacuum, Your Honor. Burden is, is very fact intensive. And the critical fact here about this asset was the trustee had an ability to divest herself of the asset with no burden attached whatever. But if the trustee had just said, I'm not accepting anybody's offer, I'm, I'm, I'm not accepting Eurogas's offer, I'm not accepting the Slovak Republic's offer, at that point would there have been the prospect of litigation for the trustee? Or for these guys? As I said, I think this issue is highly fact intensive. But, but if, if we posit those facts, which I think is a different case than perhaps not. Okay. I believe my time is up. Am I reading that correctly? You are. Thank you very much. So we'll give the affiliate an extra minute and fifty-eight. Thank you. My name is Reed Lambert of law firm of Strong and Haney. My law partner Elizabeth Leverage, who is also the trust, serves as the trustee in this case, is seated at the table with me as is Doyle Byers. He represents Eurogas II. Based only on the fact that the adversarial three-way negotiation chose to side with Mr. Byers' client and accept a settlement agreement with Eurogas II, do we have the party seated at the table as they are today? Because I think as the court may have just observed, it could have gone the other way. And the analysis, we could have been having the same discussion, only with the party switched at tables. I want to address, first of all, I guess the principal purpose that a trustee serves in a bankruptcy, which I think the court accurately observed is number one, to try and maximize the size of the estate, and number two, to try and limit the claims against the estate such that the proper creditors share the maximum amount. In this case, the trustee's efforts to do that ran into what was an obstacle of spectacular size. That obstacle was that there were two parties committed to litigating to the ends of the earth with each other, or at least all the way to the courts of Slovakia and the ICSID International Investor Arbitration Panel in France, under a treaty between the United States and the Slovak Republic. These parties had spent literally millions of dollars fighting with each other. The trustee realized almost immediately upon talking to the parties when the case began that there was no possible way to do anything in the bankruptcy estate to benefit anybody other than to rise above the fight between these two parties, try and squeeze whatever value she could out of the situation that we were in, try and limit the claims to the parties who were just claimants in the case, and see if she could do something. The result that she got was a spectacularly good result. It was not one that the trustee believed she would be able to achieve when the case began. We are now faced with a situation where really a stranger to the bankruptcy, someone who at the outset was neither a creditor, nor a claimant, nor a debtor, nor a friend of the debtor, comes into a bankruptcy court and says, the bankruptcy code compelled the trustee to try and get a worse deal. It really is quite offensive to the whole purpose of the bankruptcy code. Well, that's putting a pretty negative light on what they did. Now, as I understand what their argument is, that under the statute, if the trustee had accepted the $250,000 quick claim offer from the Slovak Republic, there would have been no burden on the estate. Therefore, even though if the issue were what King Solomon might have done, the result might have been was the abandonment if retention of the property had not been burdensome. There wouldn't have been a burden if the trustee had accepted the $250,000 quick claim offer. My question is, what burden would there have been to the estate if the trustee had accepted the $250,000 quick claim offer? I will answer that question with two parts to the answer. Part one is the specific answer, and part two is the preface. We're having the preface after the specific answer in this case. The specific answer is, is because the property was burdensome and of inconsequential value and benefit to the estate. The trustee testified to that at great length on the stand before Judge Thurman, and he found in the opinion, specifically referenced that and said he would not second guess that business judgment of the trustee when she had testified so credibly. I can't wait for your second part of that answer, because that answer would have suggested the fastest and easiest way to get rid of that burden was to sell it for $250,000 to the Slovak government. No, because had the trustee sold to the Slovak government, her testimony was, remember the Slovak claim, although they call it a quick claim, was not a quick claim. It came with a string attached. The string attached was that the trustee had to voice her opinion that the claims were not abandoned in the first instance. In the trustee's judgment, that, along with just the fact that she took any action whatsoever, would allow Eurogas 2, whose claims is the successor of the debtor, but who had also eventually bought a claim in the case to have standing itself to appear and be heard, to litigate the issue of who owned the tout claims, because remember Eurogas 2's claim was not that it obtained the claims when they were abandoned. It was that the trustee abandoned the claims in 2006. That's really, that's kind of the sleeper horse here that's easy for me to overlook, that this fight isn't really about who owns the tout claims so much as when somebody owned them, to support the Eurogas' argument about whether they had gotten that asset interfered with or not. Exactly. And I mean, the interesting thing about the claim to ownership of the tout claims is there is some Tenth Circuit authority that makes it appear that the trustee would have the upper hand in a case to establish that if she were to bring an adversary proceeding trying to establish that she owned the tout claims, there's some good authority to support the trustee. There's no authority that goes so far as to address the facts that existed here, where draft schedules and statements have been provided. It was within the knowledge of the trustee. The trustee, who's now Judge Joel Marker of the Utah Bankruptcy Court, there was some pretty compelling evidence that he was aware of and dealt with these claims. And there were competing expert opinions by respected practitioners submitted originally in the Paris arbitration that were provided to the trustee. And after all of the trustee's investigation and review, she testified before Judge Thurman that she believed that although it was an issue that she thought that the estate could prevail on as to whether they were abandoned when the case was closed the first time or not, there was definitely a good faith argument that they were abandoned previously and that in any case the one thing we knew was is that if we did anything other than, if we tried to claim any interest or even to do what the Slovak Republic wanted us to do and articulate our belief that we owned them or enter into that agreement, that where we agreed to do that, we were looking at significant litigation with Eurogas as to the issue of ownership of the tout claim. Didn't the international arbitration settle all that? No. The international arbitration, well, what the international arbitration did was they accepted the bankruptcy court, they accepted what the trustee did and what Eurogas argued about the abandonment itself, and they concluded that the claims were abandoned. They didn't need to determine whether they were abandoned in 2006 or in 2016. The only thing that mattered was that they were abandoned. Then they said, so we now know they're abandoned. That means the debtor then had them. What they took issue with was the next step of the equation, a fight that the trustee was invited to participate in and decline wisely, which was the fight over the effect of a merger that Eurogas II carried out, and their argument was, in the merger, those claims that would have belonged to the debtor then became property of Eurogas II. And that was, in the international arbitration, there were expert opinions and competing testimony on that front as well, and that's the issue that the Slovak Republic prevailed on, and the international arbitrators concluded that Eurogas II did not own the interest that was ultimately what we call the tout claims here. So anyway, so part one of the answer is, not only did the trustee testify about the cost that would be incurred fighting the issue of ownership, which I think are inevitable, and it's really easy to say, well, that's an easy issue, and it shouldn't cost very much to deal with it, but that isn't the history of these parties. I mean, the history of these parties is that you approve a settlement that's the best deal for the estate, and two appeals later, you're standing in Denver arguing about it. But in this case, though, you still have to decide that the retention of the asset was either inconsequential or burdensome. And so earlier, your answer was that when I asked you about if exceptions to the quick claim offer would have relieved any burden, your answer was, well, there was a requirement that the trustee express her personal opinion or professional opinion about ownership, about what was being transferred. And did you argue this in your appellate brief? No, what we argued in the appellate brief, what we did argue clearly in the appellate brief is the second part of that sentence, which I guess I didn't quite get out as clearly as I meant to, which is the trustee testified in great detail in the district court that accepting the quick claim offer would result in litigation over the issue of ownership. And that we did argue in the brief, and the reason it would, and I'm just filling in on the background of why we believe that that litigation over the ownership would have inevitably ensued. We're not talking about a lot of money here. $250,000 is what they offered. We already knew we were a good 75 into it to do the investigation and get to the point that we were. If we spend another amount equal to that to fight about the ownership issue and another amount equal to that to try and fight with Texas Eurogas, we've used up almost all the money. Let's say, however, that we somehow through a miracle of our economy are able to save $100,000 in the estate. What the trustee testified to and Judge Thurmond listened to, the math, and he even quoted some of it in the opinion. I'll give you the math as I see it today, which is $100,000 spread over $114 million of total claims is .0877, which is of a return. That means the million dollars of claims outside of Texas Eurogas would have been splitting up $887. That's inconsequential value, inconsequential benefit to those creditors. Now you say, well, look at the big creditors get the money though. Well, that's true, but the code, again, encourages the trustee to limit claims where she can and to defer to the views of the creditors reasonably expressed, the fourth prong of the COPEXA analysis, in fact. I'm just curious before you finish your answer, is there in this record any independent appraisal of what the real fair market value of this TELC claim is? I mean, do we have any concept or idea of how much this is worth? Well, we know what the parties believe they would win, which was in the hundreds of millions of dollars if they prevailed in Slovakia. On the TELC claim? Right. To the trustee, the TELC claims were per se valueless. She had no money to pursue them. She couldn't get standing to pursue her own arbitration. She couldn't intervene. For a variety of reasons that she testified to, there was nothing that the trustee could do with them outside of what she was dealing with these two parties. So her value was zero because she didn't have a good claim to title to the property? Well, because she didn't have a forum where she could pursue the claims. She couldn't join the internet. She was not an investor. So if the trustee held the claims, she didn't have standing to pursue an arbitration, an exit arbitration. And even if she did have zero money in the kitty and having to go through several layers of procedure to get there and spend millions of dollars to do it, it was just impractical. But the biggest problem fundamentally was she didn't have a forum that she could legitimately reach to pursue them. So what she had was something that one party wanted to abandon, which is, you know, one of the reasons it's hard to discuss how we're going to sell these things, when if we say we're going to sell whatever title we have, we only have one bidder because the other party, it's not worth anything to them to buy them off us because then they're not an investor and they don't have standing to pursue them. What the trustee actually did, as a practical matter, was to have a transaction in which there was not a sale, but a payment as an inducement to abandon the property. Well, and there's more to the sale than just that exchange. That's basically what... You could characterize it that way, but there's more to the equation than that, which is part of the reason Judge Thurman exercised his discretion to treat it as a settlement agreement because it involved, among other... I mean, you were settling, the trustee has these tout claims she could pursue. She's essentially compromising that. You have this argument over ownership, which, remember, the trustee at this point hasn't established that she even owns these claims, and she's resolving that, which is, in my mind, that was shaping up to be substantial and expensive litigation. And then number three, you have this TEG claim, this Texas Eurogas claim, and it's really easy to say, oh, we would have objected to that and it would have gone away, but the Texas Eurogas guy came to court and testified for the better part of a day, and at the close of it, it was the trustee's opinion, and the court mentioned in his ruling that it certainly appeared valid on its face, now that he wasn't reaching any conclusion because that issue had not been litigated, but it was certainly the trustee's opinion that getting rid of that claim was anything but a sure thing, and most likely an expensive and unsure thing, not something that she would have wanted to undertake. Is the loss of that opportunity proper consideration for whether this was a burdensome claim? Yes, because if you look at the... Because what you have is a claim that is valueless, and everyone agrees that the tout claims themselves in the hands of the trustee are valueless. But only valueless in the hands of the trustee, not valueless in the hands of somebody with clear title and had adequate resources to develop it. Right, and so what Judge Thurman found was, is he said, so the trustee... The Slovak Republic's argument is that the benefit that would be created to the estate is the $250,000 they offer, and then he said in the opinion, and it's really important because in the opinion he says, the trustee testified credibly as to why she rejected that, and that testimony, which wasn't provided to you in the record, was what we've been discussing here, is that because of the litigation that would have ensued, and the less than it simply wasn't worth, it wasn't worth anything to the estate. And so what she chose to do was a deal that was a much better deal for the estate, and that if you take that same $100,000 I'm talking about and divide that up among the million dollars of claims, it's 10%. It's 100 times what the Texas Euro Gas offer would have provided to creditors in really the best case scenario. So in your logic, what happened would ultimately benefit all of the creditors, but getting back to the first part of that two-part test, if it was burdensome or inconsequential, how can you... Let's say we dismiss the... Don't even consider the fact that you just pointed out that there were people that considered that property worth hundreds of billions of dollars, but even in terms of what the trustee could and ultimately did do, she engaged in a transaction in which somebody paid $250,000 into the estate. So isn't... I don't consider $250,000 inconsequential. Well, $250,000, if you don't have to litigate the Texas Euro Gas claim, and you don't have to litigate the ownership claim, is consequential. It's 10% to creditors, which is a... That's a return a trustee can live with, especially in a case like this. But $250,000 that comes with two prepackaged pieces of litigation and $113 million claim out there is inconsequential. The trustee really, if that was the only offer on the table, and the trustee is looking at, do I want to take $250,000 and fight with these two parties for the next three years? I think there's a very good chance she abandons that claim and takes zero for it, as opposed to pursuing it. But the... And I apologize that I'm over time, but let me just now give you the preface. Because the thing to me about all these... Rep, rep, rep, you need to... It'll be quick. The preface is this, is when the appellant doesn't order the record, and the court has heard three days of testimony on all of this stuff and made findings, the reach of this you've got to look at the trustee's business judgment, the court's discretion, and where the court applied the appropriate standard, cited appropriate case law for it, and made those findings, it's pretty hard to question. All right. We'll give the appellant an additional two minutes and 13 seconds. Thank you, Your Honor. Your Honor, in terms of the record, our argument is a legal one. We've tried to limit it to that. And I think the court needs to carefully look at whether the statutory requirements were met here, and they were not. This asset was clearly valuable. I mean, in the press release, Eurogas 2 says it's worth 27 billion. I have no idea if that's true, but it's worth millions and millions of dollars. Well, we can't even consider the press release. It's not in the record. Well, I did cite a case that says you can take judicial notice of items on the web, and we've given the site space. Not a press release. A press release doesn't have an independent standard of verifiability to it. I don't think we can take judicial notice of that. I would think that you could when it's their own allegation. Well, let me just mention this. I hit the link that you gave me, and I got an error message. So, even if you're right, all I can do is judicially notice an error message. Fair enough. I'll look to see. If we made a typographical error, perhaps I could correct that. In addition, Your Honor, the issue here is we look at the size of the estate. It really shouldn't matter to the trustee how that money gets divided up amongst the creditors. That's not her issue. Now, it maybe makes her feel better or it looks better if she can say, oh, I gave 10% back or I gave 1% back. The issue is how much came in and how much goes out. And so, it's a little bit distracting to talk about the TEG claim in that format. We'd also ask the court to consider our legal argument that we were entitled to litigate that first, that our objection to the claim, which we were happy to take on, that we should have been allowed to do that before the trustee said, this is too burdensome, I'm just going to abandon a valuable asset of the estate. If you were the judge, why would you do that? I mean, a district judge, a trial judge, a bankruptcy judge can consider any motions in the sequence that he or she wants to take them up. And if you're a bankruptcy court, why would you do that? You've got two offers for an identical sum of money, $250,000. One of them says it's going to move this issue about the viability, the validity of the TEG claim. And then the other one has, you know, that you have to decide that claim and the validity of that claim. And so, if I'm asking you a real question, if you were the bankruptcy court, why would you do that? I would do that because that's what the law says I have to do. And then you decide that the TEG claim has validity, let's say hypothetically, and then you decide I'm going to approve the abandonment, the motion for abandonment of the asset. And so, what I just decided is of no consequential value. Well, Judge Thurman issued the TS, the CS mining case in which he said you have to allow, you have to allow objections to be heard before you consider settlements. I'm just saying that the law should be applied uniformly without a preconceived end in mind. That's what the law is, and that's why I think I would do that as a judge. Okay. Thank you very much. It was very well argued on behalf of both parties. This matter will be submitted. Court is at recess until 9 o'clock tomorrow.